(141 App. Div. 640.)

## In re BARLOW, Magistrate.

(Supreme Court, Appellate Division, First Department.   December 30, 1910.)

1. JUDGES (§ 11*)—REMOVAL—GROUNDS—CAUSE.
   A proceeding for the removal of a magistrate of the city of New York
   under Const. art. 6, § 17, providing that justices of inferior courts, not
   of record, may be removed for cause, and Greater New York Charter
   (Laws 1901, c. 466) § 1401a, authorizing the removal of a city magistrate
   for cause, is a proceeding to impeach an officer, and the cause justifying
   impeachment must be such as to at least tend to establish that he has so
   conducted himself that he is an unfit person to be continued in the office,
   because in the exercise of official power he has been influenced by im-
   proper motives, or because he lacks the qualities necessary to properly
   perform the duties of his office. ·
   [Ed. Note.—For other cases, see Judges, Dec. Dig. § 11.*]

2. EVIDENCE (§ 41*)—JUDICIAL NOTICE.
   The Appellate Division, First Department, may take judicial notice of
   the fact that a person has been for many years a magistrate in the city
   of New York, during which time he has borne the highest character for
   integrity and efficiency.
   [Ed. Note.—For other cases, see Evidence, Dec. Dig. § 41.*]

3. EXTRADITION (§ 37*)—FUGITIVE FROM JUSTICE—BAIL—POWER TO TAKE.
   Under Code Cr. Proc. § 827 et seq., regulating proceedings against fugi-
   tives from justice, and authorizing the taking of bail, the officers author-
   ized to admit to bail a fugitive from justice are a justice of the Supreme
   Court or a county judge, and a discharge by a magistrate of the city of
   New York of a fugitive on giving bail approved by him is without au-
   thority.
   [Ed. Note.—For other cases, see \Extradition, Dec. Dig. § 37.*]

4. EXTRADITION (§ 37*)—INFERIOR COURTS—JURISDICTION.
   A magistrate of the city of New York who accepts bail for a prisoner
   arrested under a warrant for the arrest of a fugitive from justice, with-
   out giving notice to the district attorney, violates Code Cr. Proc. § 832,
   requiring the magistrate to give notice to the district attorney immedi-
   ately on the arrest of one charged with being a fugitive, and his act is not
   excused because of the threats of the prisoner's attorney to apply to a

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

justice of the Supreme Court for the discharge of the prisoner unless the magistrate accepts bail.

[Ed. Note.—For other cases, see Extradition, Dec. Dig. § 37.*]

5. BAIL (§ 49*)—ADMISSION TO BAIL.

The act of a magistrate of the city of New York in accepting bail without subjecting the sureties to an examination as to their sufficiency, but merely accepting an affidavit without investigation, and without notice to the police or to the district attorney, so that the sufficiency of the bail may be investigated, and relying solely on the statement of the attorney for the prisoner that the bail is sufficient, and on an affidavit that the real estate of the sureties exceeds a value sufficient to qualify the sureties, is irregular, and shows negligence in the exercise of a power assumed to belong to him.

[Ed. Note.—For other cases, see Bail, Dec. Dig. § 49.*]

6. JUDGES (§ 11*)—REMOVAL—GROUNDS.

A single act of a magistrate of the city of New York in accepting bail furnished by prisoners arrested as fugitives from justice, and thereby exceeding the power conferred on him, and in violating the statute requiring him to give notice to the district attorney, and in failing to exercise proper diligence in determining the sufficiency of the sureties on the bond tendered, does not justify the removal of the magistrate within Const. art. 6, § 17, and Greater New York Charter (Laws 1901, c. 466) § 1401a, authorizing the removal of a city magistrate for cause, there being no evidence of corruption, he having been a magistrate for many years and having borne the highest character for integrity and efficiency.

[Ed. Note.—For other cases, see Judges, Dec. Dig. § 11.*]

Petition by Charles Whitman, District Attorney of the County of New York, for the investigation of Peter T. Barlow, a magistrate of the First Division of the City of New York, for such action as the court may deem proper. Dismissed.

Argued before INGRAHAM, P. J., and McLAUGHLIN, SCOTT, LAUGHLIN, and CLARKE, JJ.

Charles S. Whitman, Dist. Atty., in pro. per.
Isadore Kresel (Austen G. Fox, of counsel), for respondent.

INGRAHAM, P. J. The district attorney of the county of New York has presented to this court a petition stating that by the direction of the Governor of this state he presented the facts stated in the petition to this court, asking for such action as the court should deem proper. Annexed to this petition is a report by the district attorney to the Governor, dated September 17, 1910, with a recommendation by the Governor that the matter should be presented to this court for such consideration and disposition as it may think the facts justified. There are also annexed to the petition certain communications to the Governor from residents of Boston, Mass., New Haven, Conn., and the police authorities of those cities; affidavits of police officers of the city of New York, and others; and the statement of the respondent in relation to his actions. Upon the presentation of this petition and these papers to the court, the respondent interposed an answer, and upon this petition with the accompanying papers and depositions, it is now to be determined whether the facts alleged are such as to justify the court in requiring formal charges to be presented looking to the removal of the respondent as a city magistrate.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Before proceeding to discuss the facts as they appear, it would be well to clearly state the question that is presented to us.

This application is made under the provisions of section 17, art. 6, of the Constitution, which provides that judges or justices of inferior courts not of record may be removed for cause, after due notice and an opportunity of being heard, by such courts as are or may be prescribed by law, and section 1401a of the charter of the city of New York (Laws 1901, c. 466) which provides that a city magistrate or police clerk may be removed for cause, after due notice and an opportunity of being heard, by the Appellate Division of the Supreme Court within the division for which such city magistrate or police clerk was appointed. We have in several cases discussed these provisions, and have indicated the nature of the charges against a police magistrate which would justify the court in entertaining a proceeding to remove him. In Matter of Baker, 94 App. Div. 278, 87 N. Y. Supp. 1022, we held that a determination of a magistrate, though erroneous, where it did not appear that the decision in the case presented was so clearly wrong that it exhibited a corrupt intent or showed that the magistrate was incompetent to perform the duties of his office, was not sufficient to justify a charge being made against him; that in the absence of an allegation, based upon proof, that the magistrate did not exercise his best judgment in disposing of the questions before him, his removal would not be justified. In Matter of Bolte, 97 App. Div. 551, 90 N. Y. Supp. 499, we had an application to remove on charges a justice of the Municipal Court of the city of New York, and Mr. Justice Laughlin, delivering the opinion of the court, there states the grounds which would justify the removal of a magistrate. In that opinion he says:

"Many of the charges are connected and have a material bearing upon one another. One, therefore, taken by itself, might be wholly insufficient, but, taken with others, might be convincing evidence that the respondent was unfit to hold a judicial office. A judicial officer may not be removed for merely making an erroneous decision or ruling, but he may be removed for *willfully* making a wrong decision or an erroneous ruling, or for a reckless exercise of his judicial functions without regard to the rights of litigants, or for manifesting friendship or favoritism toward one party or his attorney to the prejudice of another and to the destruction of his usefulness as a magistrate through the loss of public confidence in his fairness or integrity."

In Matter of Tighe, 97 App. Div. 28, 89 N. Y. Supp. 719, a similar application was before the Appellate Division in the Second Department. The presiding justice in his opinion quotes a decision of the former General Term in the Second Department with approval, stating:

"This is practically an impeachment of a judicial officer. We are here to try him upon a charge of official misconduct. We cannot find him guilty and remove him simply because he has made an error in judgment, or has made a mistake in law, or has wrongly decided a particular case before him."

And after a discussion of the facts in that case, the presiding justice proceeded:

"Conceding that many, if not most, of the decisions in question were wrong, and that the offenders should have been held by the magistrate upon the proof presented to him, there is nothing to indicate that his conduct in dis-

charging them was prompted by fraud, corruption, a deliberate intent to violate the law, or a conscious and corrupt bias."

In Matter of Droege, 129 App. Div. 866, 114 N. Y. Supp. 375, after referring to these cases, we stated the principles that should be applied in a proceeding of this character. It was there said that:

"The acts charged against the officer must be such as to justify the finding that his future retention of office is inconsistent with the fair and proper administration of justice which the law intrusts to him. * * * It is not error of judgment; it is not error in the decision of particular cases; it is not mistakes in the construction of particular statutes or in the determination of the extent or limitation of his powers, standing alone, which would justify his removal; but such conduct as satisfies the court that the magistrate has been actuated by unworthy or illegal motives in the exercise of his judicial duties; or has committed such acts as justify the inference that either from ignorance or from a perverted character, or from a lack of judicial qualities, he has so administered the power conferred upon him as to show that he should not be continued in office. A single decision or judicial action, correct or not, which is established to have been based upon improper motives, and not upon a desire to do justice, or to properly perform the duties of his office, will justify a removal, while many improper judicial determinations, or mistakes based merely upon errors of judgment, and without corrupt or improper motives, would not supply the 'cause' contemplated by the Constitution and the statutes."

These cases present the principles that should be applied in considering a charge against a judicial officer in a proceeding of this character. We must not forget that this is an impeachment of an officer, the result of which is to remove him from office. The "cause" which justifies the impeachment of a judicial officer would be that the officer in the exercise of the power conferred upon him has been influenced by improper motives. The first requisite for a judicial officer is that his judicial acts should be the result of an honest attempt to administer the power conferred upon him uninfluenced by any other consideration. Where there is a charge of improper motives, whether they take the form of a pecuniary or other advantage to the magistrate, or are the result of solicitation or influence of others, would require a searching investigation, and, if such a charge was established, would require the removal of the magistrate. The "cause" would also include such conduct as indicated a lack of the qualities necessary to properly perform the duties of his office. Good intentions would not save the magistrate, if the facts connected with the administration of his office were such as to show ignorance, a perverted character, or a lack of those intellectual and moral qualities which are necessary for the performance of the duties of his office. The statement of this latter ground of removal is sufficient to show that a single mistake or inadvertence, erroneous decision, or improper exercise of power, would not be a basis for such a charge, unless the facts disclosed such a perverted intellect or such a total disregard of established principles of justice or morality as established the main fact required for his removal. Of course, included within this latter definition would be a case where, in consequence of physical or mental decay or disease, a magistrate should become personally disqualified from the performance of his duties. The whole question may be briefly summed up by stating that the charges made against a judicial

officer to justify his removal must be such as to at least tend to establish that the officer has so conducted himself in the performance of the duties of his office that he is an unfit and improper person to be continued in the discharge of the official duties connected with the office.

Bearing these principles in mind, we will consider the facts as disclosed by the papers submitted to us. It may not be improper, however, to premise this statement of the facts by calling attention to the fact that the respondent has been for many years a magistrate in the city of New. York, during which time he has borne the highest character for integrity and efficiency in the discharge of his duties. This court can take judicial notice of that fact, because the review of .cases that have come before the magistrates enables the court to judge of the manner in which they perform their duties. .As to the respondent, there has never before been a question that has been called to our attention as to the fidelity and intelligence with which he has performed his duties, and there is not, in the charges presented to us or in any of the facts or circumstances which appear in the papers accompanying the petition, as I read them, anything to justify even a suspicion that the respondent was actuated by any improper motive. There is not the slightest indication of any inducement offered to the magistrate to secure the release of the prisoners who will be presently referred to; not a particle of evidence of any influence exerted on their behalf; and no evidence that the magistrate intentionally disregarded any statutory provision or violated any duty imposed upon him. The only inference that can be drawn from these facts is that, in a single instance, he has been negligent in not taking the necessary precautions before admitting prisoners to bail; that his actions were hasty and ill-advised; and that in admitting the prisoners to bail he exercised a power not expressly conferred upon him.

The facts disclosed are that three persons known as Harris Rothstein, Jacob Goldberg, and Joseph Goldberg were accused of having committed a burglary in the city of Boston in the state of Massachusetts, and had stolen $15,000 worth of jewelry on the 28th of February, 1910. These same persons were also charged with having committed burglary in the city of New Haven in the state of Connecticut, and a burglary in the state of Pennsylvania. On the 26th of March, 1910, these three persons were arrested in the city of New York, the specific charge being that .they had committed a burglary in the city of Boston, and had there stolen from one Ulian about $15,000 worth of jewelry. A police officer from Massachusetts aided the police of the city of New York in locating these prisoners, upon each of whom was found certain articles of jewelry which· were identified by Ulian as property stolen from his safe. Other jewelry was also found upon these prisoners which was subsequently identified by one Meyer, of Philadelphia, Pa., and by one Sarasohn, of New Haven, Conn., as property that had been stolen from them in those cities. There was other evidence of identification which was sufficient to connect these prisoners with these burglaries. On Saturday morning, March 27, 1910, the prisoners were arraigned in a police court before the respondent, and were then remanded back to police headquarters for 48

hours without bail.   On Monday morning, March 28, 1910, the prisoners were again brought before the respondent, when they were represented by Moses A. Sachs as counsel, who requested that the hearing before the magistrate be adjourned until Wednesday morning, March 30, 1910.   The prisoners' attorney then requested the magistrate to fix bail, which he did, at the sum of $10,000 for each of the prisoners.   Counsel for the prisoners strenuously objected to the amount of the bail, when one of the police officers stated to the magistrate that the defendants were wanted for similar crimes in Philadelphia and New Haven, and that, in his opinion, if the amount was reduced the prisoners would jump their bail; that the defendants were wanted for burglaries of property amounting to about $35,000, and that he had witnesses from three different states in court at that time; and that he thought that $20,000 would be the right amount of bail, as the prisoners had plenty of money.   The respondent thereupon stated to counsel for the prisoners that if he would produce good and sufficient bonds upon real estate, he would reduce the bail from $10,000 to $5,000, and the case was then adjourned until March 30, 1910, for examination.   One of the New York police officers then submitted what was called a short form of affidavit, stating that on the 26th of March, 1910, at the city ·of New York he had arrested these three prisoners on a charge of having committed the crime of burglary, the officer having been informed by Ulian that the defendants on the 28th of February, 1910, in the city of Boston, Mass., burglarized the premises of the said Ulian and stole jewelry of the value of $14,000, a part of said property having been found in the possession of the defendants; that the defendants had fled the jurisdiction of the state of Massachusetts, and were now here; and the officer asked that the defendants be held a reasonable time to enable him to produce the witnesses above named, and such other witnesses of the above crime as he might be able to find.   That deposition was taken before the magistrate, who thereupon committed the prisoners for further examination, which was fixed to take place on the morning of March 30, 1910, before the magistrate.

There is considerable dispute among these affiants as to what took place before the magistrate on March 28, 1910.   It is conceded, however, that the magistrate was informed that these men had been identified as the thieves who had committed the burglary in Massachusetts, and that jewelry taken at that burglary was found upon the persons of all three of the prisoners.   It also appeared that on the following day the attorney who had been retained by the prisoners was asked by them to have them liberated on bail if that were possible.   The attorney then produced two bondsmen who were willing, for a consideration paid them, to justify as sureties, and the attorney then procured from the clerk of the magistrate's court three bail bonds, one for each of the prisoners, in the penal sum of $5,000 each.   These bonds were filled up by the clerk of the police court, and seem to have been signed, although the time is not stated, by the prisoners.   On the afternoon of the 29th of March, this attorney in company with these two bondsmen went to the home of the magistrate with these bail

bonds signed by the prisoners and by the sureties. It does not appear that up to this time the district attorney had been notified of the arrest or of the action of the magistrate in fixing the bail, and no notice was given the police authorities of the names of the sureties so that either the district attorney or the police had opportunity to investigate the sufficiency of the bail. There is evidence that on the afternoon of March 29, 1910, the attorney for the prisoners appeared before the magistrate, claiming that $10,000 was excessive and asking that it be reduced. The magistrate then refused to reduce the bail, when the attorney stated that he would apply to a justice of the Supreme Court to have the prisoners discharged. The attorney then handed to the magistrate two deeds of real property, which the magistrate examined, and then told the clerk to prepare the bonds for the sureties to justify as the owners of the property described in those deeds. After the bail bonds were prepared they were delivered to the magistrate, who said he would consider their acceptance. Subsequent to this interview on the 29th of March, the attorney and the two bondsmen went to the home of the magistrate. The attorney who had appeared for the prisoners assured the magistrate that the bonds were sufficient, and that the sureties were responsible. The magistrate then took the acknowledgment of the bonds and swore them to their affidavits of justification, and on the assurance of the attorney, without further examination, approved the bonds and signed a discharge for the three prisoners. When these discharges were presented at the prison, it was found that the name of one of the prisoners was not correctly recited in the discharge, and the officers refused to discharge him, but allowed the other two prisoners their liberty. The magistrate states that he was subsequently called on the telephone and informed of this mistake by the officers of the jail and stated that nothing could be done about it until the following morning. The next morning when the magistrate went to the police court the mistake was rectified and a discharge signed, upon which the third prisoner was released. A short time afterwards, when the cases were called for examination, the prisoners had disappeared, and no trace of them has since been discovered.

So far as the record shows, the prisoners were charged with having committed a burglary of property of the value of $14,000 or $15,000 in the state of Massachusetts. There is evidence that the magistrate was also informed that the prisoners had been charged with burglaries in other states, the total amount of which would aggregate $35,000, but no written deposition or charge was submitted to the magistrate from which it appeared that the amount of property stolen by the prisoners exceeded the $14,000 or $15,000 stated as being the value of the property taken in Massachusetts.

The question presented here is, whether these facts, if established, in the absence of any charge of improper motive or that the magistrate did not in good faith believe that bail to the extent of $15,000 for the three prisoners would be sufficient to insure their attendance on their examination, and did not in good faith believe that the sureties

upon the bonds were responsible for the amount of bail fixed, would justify the court in removing the respondent from his official position.

I am inclined to think that the magistrate had no power to accept bail for these prisoners. The proceedings in the case of an arrest of a fugitive from justice from another state or territory is regulated by title 1, c. 4, of the Code of Criminal Procedure, and the provisions of that chapter regulate the powers of a magistrate in case of such an arrest. By section 828 it is provided that a magistrate may issue a warrant as a preliminary proceeding to the issuing of a requisition by the Governor of another state or territory upon the Governor of this state for the apprehension of a person charged with treason, felony, or other crime, who shall flee from justice and be found within this state. Section 829 provides that the proceeding for the arrest and commitment of the persons charged are in all respects similar to those provided in this Code for the arrest and commitment of a person charged with a public offense committed in this state. Section 830 provides that if, from an examination under such warrant, it appears to the satisfaction of the magistrate that the person under arrest is charged in such other state or territory with treason, felony, or other crime, and has fled from justice, the magistrate, by warrant reciting the accusation, must commit him to the proper custody in his county for a time specified in the warrant, to enable an arrest of the fugitive to be made under a warrant from the Governor of this state, which commitment shall not exceed 30 days, exclusive of the day of arrest, on a requisition of the executive authority of the state or territory in which he is charged to have committed the offense, unless he give bail as provided in the next section, or until he be legally discharged. Section 831 provides that any judge of any court named in section 827 may, in his discretion, admit the prisoner arrested to bail upon undertaking with sufficient sureties and in such sum as he deems proper for an appearance before him at a time specified in the undertaking, which must not be later than the expiration of 30 days from the date of arrest, exclusive of such date, and for his surrender to be arrested under the warrant of the Governor of this state. Section 832 provides that immediately upon the arrest of the person charged, the magistrate must give notice to the district attorney of the county of the name of the person and the cause of his arrest. Subdivision 2 of section 827 provides that any officer to whom such warrant shall be directed or intrusted shall deliver the person arrested into the custody of the agent or agents named in the warrant of the Governor of this state, such officer must, unless the same be waived as hereinafter stated, take the prisoner or prisoners before a judge of the Supreme Court or a county judge. The only judges or courts named in this section 827 are a judge of the Supreme Court and a county judge. It would seem, therefore, that the only officers who were authorized to admit to bail a person arrested, either before or after his examination before a magistrate, under a warrant to arrest a person as a fugitive from justice, is a justice of the Supreme Court or a county judge, and the discharge of those prisoners was, therefore, without authority.

It also appeared that the magistrate violated section 832 of the

Code of Criminal Procedure, in failing to give notice to the district attorney as required thereby. The fact that the magistrate was influenced by the threat of the prisoner's attorney to apply to a justice of the Supreme Court to have the prisoners discharged unless the magistrate reduced the bail is no excuse, for the magistrate was at all times under the supervision of the Supreme Court, and he could not have presumed that a justice of the Supreme Court would have discharged the prisoners or admitted them to bail in a less amount than he had exacted unless the prisoners were entitled to such discharge, in which case they should not have been held at all. So far as I can see, there would have been no justification for such a discharge by a justice of the Supreme Court, as, under the facts, evidence of which could have been procured by the police officers and which was stated to the magistrate, those prisoners were justly held to await the warrant of the Governor for their extradition.

The proceedings on the acceptance of the bail also seem to have been irregular. The sureties were subjected to no examination as to their sufficiency, but a simple affidavit was accepted without investigation, without notice to the police or the district attorney so that the sufficiency of the bail could be investigated. There was simply the statement of the attorney for the prisoners that the bail was sufficient, and an affidavit that certain real property which the sureties claimed that they owned was of a value sufficient to qualify the sureties, over and above the mortgages to which the property was subject. It had been stated to the magistrate that these prisoners were confirmed criminals and had been before arrested and convicted for similar burglaries. The examination was fixed for the 30th day of March, and the application to discharge them was made on the evening of the 29th of March. One of the prisoners was not in fact discharged until the morning of the 30th, just before the examination was to take place. The insistence of the defendants in procuring their discharge the evening before the examination was to take place, after they had been in custody for several days, was of itself a circumstance which should have attracted the attention of the magistrate and justified him in withholding a discharge until after their examination.

Upon these papers, therefore, it cannot be said that the magistrate did not exceed the power conferred upon him by law, and was not negligent in the exercise of the power which he assumed to exercise. But assuming these facts to be true, would they justify the court in removing the magistrate? In the absence of any charge or suspicion of corruption or improper motive—as one isolated instance in which a magistrate was negligent in the discharge of his duties—I think, applying the principles we have before stated, anything that here appears falls far short of the proof essential to convict an officer of such conduct as would justify his removal. Many thousands of prisoners are brought before these magistrates each year, and they are required to act summarily and often with great expedition. In the discharge of such duties, mistakes may often occur, and no magistrate, however able he may be, and however sincerely he is devoted to the perform-

ance of his public duties, can be expected to avoid mistakes in the administration of his office. A single mistake should not, I think, expose the officer to a proceeding of this character where there is an absolute lack of any charge of improper motive or corrupt intention. And this is especially so where the magistrate, as in this case, has to his credit years of intelligent and conscientious service. The magistrate appears in this case to have relied upon the assurance of the attorney for the prisoners in relation to this bail. He did not know, as we do, of the method by which this bail had been procured, the circumstances surrounding the prisoners' attorney's connection with it, and the information that he had as to the sufficiency of the bail. That he was deceived by the assurances of the attorney may be conceded; but nothing appears to justify a suspicion that the magistrate was not actually deceived, and we cannot say from the facts as they appear that a reliance upon such assurances was more than an error of judgment. It is most unfortunate that, from this error of the magistrate, there has resulted the escape of these prisoners, and but for that fact and the representations that have been made by the authorities of the other states, there would probably have been no complaint made against the respondent. After a careful consideration of all the facts as they appear from these papers, I am, however, clearly of the opinion that there is nothing to question the honesty and integrity of the magistrate. No fact is stated which shows more than an error of judgment and a neglect to exercise the care and caution required in a particular case; and admitting the facts which show this isolated instance of the failure of the magistrate to properly perform his duty, it is not a sufficient basis for a charge against him looking to his removal from office.

Entertaining these views, I think these proceedings should be dismissed. All concur.

LAUGHLIN, J. (concurring). I would like it better if further evidence were taken to make some points more clear and to remove doubts on others; but the burden is not on the magistrate, and I concur in the dismissal of the proceeding on the ground that the evidence submitted is insufficient to require his removal.

I feel keenly, however, the reflection and criticism on the administration of the extradition law by the judiciary of our state, justly merited by the record now before the court and which has resulted in a miscarriage of justice, particularly concerning the rights of three sister states and generally the entire nation as well, for it pertains to the performance of the duty of surrendering fugitives from justice which is imposed by the federal Constitution and by the extradition laws enacted by the Congress and by the Legislature of our state (Const. U. S. art. 4, § 2; Rev. St. § 5278 [U. S. Comp. St. 1901, p. 3597]; Code Cr. Proc. §§ 827, 831), for which amends cannot be made, but only a confession of error and an expression of regret. I therefore deem it proper to add a few observations by way of caution and admonition to magistrates, and of warning against the assumption on their part of jurisdiction to admit to bail in extradition cases, for

their jurisdiction is not general, but is limited and confined to the authority clearly conferred by statute, and they should not attempt to exercise jurisdiction unless they can point to a legislative enactment conferring it upon them. We are not informed how the magistrate came to assume jurisdiction to admit to bail in extradition cases; but if it appeared that he *knowingly* acted without jurisdiction, I would vote for removal. Mistakes of fact and errors of law may be overlooked, but it is not so easy to excuse the unwarranted assumption of jurisdiction by a magistrate with limited powers.

The petition was presented pursuant to the direction of Gov. Hughes, to whose attention the escape of the accused after having been admitted to bail, had been drawn by the authorities of Massachusetts and Connecticut. The notice of motion and petition, which are supplemented by a statement made by the magistrate and to which he has filed a verified answer, merely present the facts without any formal charge, and the court is requested "to deal with the matter according to law." The acts of the magistrate are shown, but none of them is characterized as being unlawful, or as having been done in bad faith or from a corrupt motive.

It appears that the magistrate was deceived by the attorney for the accused, in whom he had confidence. It also appears that this attorney misrepresented the facts to the sureties, and that, without any evidence as to the value of their property, he filled in valuations in the affidavits of justification far in excess of the actual values, and then, without reading the undertaking or affidavits of justification to them, permitted them to acknowledge the undertaking and to make the affidavits of justification before the magistrate in his presence. On these facts, he should be presented for disbarment or discipline by the district attorney or by the association of the bar.

The magistrate, in view of the nature and the number of the charges against the accused and of the warning which he received from the detectives of the New York police force with respect to the means possessed by the accused and to the probable effect of reducing bail, not only should not have reduced the bail, but even if he had jurisdiction to admit to bail, I think it would have been an abuse of discretion to give the accused their freedom the night before the morning to which the hearing was adjourned; for had the crimes been committed here, they were not bailable as matter of right, and, on the statement of the detective, there was reason to believe that by admitting them to bail they would escape unless very high bail were exacted (Code Cr. Proc. § 553). The most charitable view that can be taken of the conduct of the magistrate in reducing and accepting the bail is that he resented the suggestion of the detective with respect to a matter which he supposed rested in his judicial discretion. The representations made by the detective were perfectly proper, however, and should have been given due consideration. As an examining magistrate, if the crimes had been committed in New York, he had power to admit the accused to bail *pending* examination before him, although he would have been without power to admit them to bail after *holding* them to answer to the crimes as charged, which, in that view, would

have been felonies and punishable by more than five years' imprisonment. Code Cr. Proc. §§ 146, 147, 148, 192, 209, 210, 557, 558; Sutherland v. St. Lawrence County, 101 App. Div. 299, 91 N. Y. Supp. 962.

The moving papers contain no suggestion that the magistrate acted without jurisdiction, and we are not informed whether he complied with the provisions of section 832 of the Code of Criminal Procedure, which made it his mandatory duty, on the accused being brought before him, to notify the district attorney at once. Had such notice been given, however, it is probable that the accused would not have been admitted to bail, or at least not on insufficient bail, and with sureties who could not justify and who did not know the contents of their undertakings. Doubtless the magistrate assumed that since he had, by virtue of the provisions of section 831 of the Code of Criminal Procedure, jurisdiction to issue warrants for the arrest of fugitives from justice as a preliminary proceeding to requisition papers, and to proceed with the examination for the purpose of ascertaining whether they were *charged* in any state or territory with extraditable offenses, he might proceed as if the crimes were charged as having been committed here and take bail pending such examinations. If it be customary in such cases for magistrates to admit to bail, the practice should not be continued, for it is quite clear, I think, that they are wholly without authority to admit to bail in extradition cases. The authority to admit to bail in such cases is, by the express provisions of the Code of Criminal Procedure, confined to justices of the Supreme Court and to county judges. Code Cr. Proc. §§ 827, 831. I have carefully examined the provisions of the consolidation act and of the Greater New York charter, and I fail therein to find any statutory provision vesting in the city magistrates authority to exercise the powers conferred on justices of the Supreme Court and county judges by section 827 of the Code of Criminal Procedure with respect to admitting to bail in such cases. There being no county judge in the county of New York, probably judges of the Court of General Sessions are authorized to exercise like powers in this county. Code Cr. Proc. § 51, subd. 2, and section 39. That authority, however, never extended to police justices, for their jurisdiction to admit to bail was, I think, limited to cases of crimes committed and triable here (Consolidation Act, § 1486); but if it did extend to extradition cases, while it may have been transmitted to the city magistrates when police justices were abolished and the office of city magistrate was created (section 3, c. 601, Laws 1895), and, if so, was continued by section 1392 of the Greater New York charter as originally enacted, yet by the revision of section 1392 of the Greater New York charter in 1901, if any authority to admit to bail had been conferred on police justices by the consolidation act and transmitted to city magistrates, it was repealed, and since that time it is quite clear that there has not even been room for contention that city magistrates possess authority to admit to bail in extradition cases. The duty owing to other states under the extradition laws requires that the utmost care should be exercised to hold alleged fugitives from justice

until extradition warrants may be obtained in due course from the executive of the state. There is no right to bail in extradition cases, excepting as the state Legislature may so provide by statutes not inconsistent with acts of the Congress, on arrests of fugitives from justice pending extradition proceedings. Ex parte Erwin, 7 Tex. App. 288; s. c., 21 Alb. Law J. 57. See, also, People ex rel. Meeker v. Baker, 139 App. Div. 471, 124 N. Y. Supp. 47. The statutory provisions for the arrest and holding of fugitives from justice (section 831, Code Cr. Proc), in advance of the issuance of an extradition warrant, were designed to make extradition proceedings effectual, but here their unwarranted and unlawful exercise has frustrated the extradition of these alleged burglars. The Legislature foresaw that, under this authority which it conferred to arrest in anticipation of an application for extradition, arrests might be made in cases where it would be proper to admit to bail; but in order to reasonably insure against extradition becoming abortive by the exercise of that authority, it clothed only the higher judicial officers with jurisdiction to admit to bail in such cases.

If, therefore, it be customary for magistrates to assume to exercise authority to admit to bail in extradition cases, they should take warning and refrain from so doing in the future until they are able to point to clear statutory authority therefor.

