(87 App. Div. 310.)

PEOPLE ex rel. REARDON v. PARTRIDGE, Police Com'r, et al.

(Supreme Court, Appellate Division, Second Department. July 24, 1903.)

POLICEMEN—CONVICTION AND DISCHARGE—JURISDICTION.
    Under Rev. Greater New York Charter, Laws 1901, p. 127, c. 466, § 300, prohibiting the punishment of a member of the police force till charges against him have been examined, heard, and investigated before the police commissioner or one of his deputies; and section 302 (page 129), providing that the police commissioner shall have power, on conviction by him, or an officer of competent jurisdiction, of a member of the force, on certain charges, to punish him—a deputy commissioner may convict a member, and the commissioner thereon pronounce the judgment.

2. SAME—SUFFICIENCY OF EVIDENCE.
Evidence on certiorari to review a determination of the police commissioner and a deputy commissioner, convicting and dismissing a policeman, *held* insufficient to support findings of misconduct.

3. SAME—CERTIORARI—REVERSAL.
The determination of the police commissioner imposing the highest penalty on a policeman on four findings, by the deputy commissioner, of misconduct, will be reversed, and a new trial directed, the evidence being insufficient to sustain two of the findings, and the other two resting on the oath of a single witness, against the denial of the officer, who had been a member of the police force for 34 years, with a good record.

Certiorari, on the relation of John Reardon, against John N. Partridge, as police commissioner of the city of New York, and Nathaniel B. Thurston, as first deputy police commissioner of said city, to review the determination of respondents dismissing relator from the office of captain of police in the city of New York. Reversed.

Argued before GOODRICH, P. J., and BARTLETT, JENKS, WOODWARD, and HIRSCHBERG, JJ.

Hugo Hirsh, for relator.

Walter S. Brewster (James McKeen, on the brief), for respondents.

WILLARD BARTLETT, J. The first question to be considered in this case relates to the manner in which jurisdiction was exercised in the trial and dismissal of the relator. He was tried before Nathaniel B. Thurston, first deputy police commissioner of the city of New York. The charges against him were three in number: First, neglect of duty; second, conduct unbecoming an officer; and, third, violation of the rules of the police department. The first deputy commissioner adjudged him guilty of the first and second charges, and not guilty of the third charge; and he recommended that the relator be dismissed from the force. Upon this conviction the police commissioner subsequently pronounced judgment, dismissing the relator. It is now contended that the proceeding was invalid, because it involved a judicial hearing by one officer and a final determination by the other. The provisions of the Revised Greater New York Charter (Laws 1901, p. 1, c. 466), however, in respect to the trial of police offenders, appear to contemplate precisely this procedure. Section 300 (page 127) empowers the police commissioner to adopt rules and regulations for the examination, hearing, investigation, and determination of charges against any member of the police force, but prohibits the punishment of any such member "until written charges shall have been made or preferred against him, * * * nor until such charges have been examined, heard and investigated before the police commissioner or one of his deputies." Clearly enough, this authorized a trial of the relator before the first deputy police commissioner. As to the subsequent exercise of the power of dismissal by the police commissioner himself after a trial before one of his deputies, we have the provisions of section 302 of the Revised Greater New York Charter (Laws 1901, p. 129, c. 466), the first part of which is as follows:

"The police commissioner shall have power, in his discretion, on conviction by him or by any court or officer of competent jurisdiction, of a member of

the force of any criminal offense, or neglect of duty, violation of rules, or neglect or disobedience of orders, or absence without leave, or any conduct. injurious to the public peace or welfare, or immoral conduct or conduct unbecoming an officer, or any breach of discipline, to punish the offending party by reprimand, forfeiting and withholding pay for a specified time, suspension, without pay during such suspension, or by dismissal from the force."

Under section 300 the first deputy police commissioner was an officer of competent jurisdiction; the relator had been convicted, before such officer of competent jurisdiction, of neglect of duty and of conduct unbecoming an officer, and hence, under section 302, the police commissioner was expressly invested with authority to punish the offender by inflicting any of the penalties mentioned in that section, the maximum penalty being dismissal from the force.

In view of these provisions of the charter, which give express legislative sanction to the method of procedure adopted in this case, it seems to me that the jurisdiction of the respondents is not open to serious doubt. Since the oral argument, we have been referred to the decision of the Appellate Division of the First Department in the case of People ex rel. De Vries v. Hamilton, County Clerk (rendered at the May term, 1903) 82 N. Y. Supp. 884. There the relator was an exempt fireman, holding the position of docket comparing clerk in the office of the county clerk of New York county. Upon a charge of intoxication he was tried before the deputy county clerk, and after the hearing was closed the evidence was submitted to the county clerk, who examined the same in the absence of the relator and without notice to him, and made an order removing him from his position. The Appellate Division held that, while the deputy had authority to take the proof and conduct the trial, there was no power subsequently to pass the proceeding over to the county clerk to make the determination. "In the orderly course of judicial procedure," said Hatch, J., "a trial may not be severed so that one functionary may take the proof and another make the determination. Such power has never been exercised, so far as we are aware, unless it was conferred by statutory enactment." In the present case, however, as I have endeavored to show, the statute applicable to police trials in the city of New York permits the police commissioner to pronounce judgment upon a conviction had before one of his deputies. The De Vries Case, therefore, has no application here.

The determination by the first deputy police commissioner convicts the relator of four distinct offenses. The deputy finds:

"(1) That on numerous occasions in 1901 and 1902, Capt. Reardon failed to make certain entries in the blotter, as required by rule 5, paragraph E, of the Rules and Regulations of the Department; (2) that he directed and permitted blank spaces to be left in the blotters by officers under his command, which spaces were afterwards filled in by him, to cover unauthorized absences, with the intent to deceive his superior officers and to falsify the record; (3) that he did on several occasions forward to the inspector of his district reports not countersigned by himself, as required by rule 5, paragraph G, of the Rules and Regulations of the Department, but signed by some other person; and (4) that on May 9, 1902, he made a false statement to Deputy Commissioner Ebstein, with intent to deceive."

It is earnestly insisted, in behalf of the relator, that upon all of the evidence in the record before us there was such a preponderance

of proof against the existence of the facts thus found that the verdict
of a jury affirming the existence thereof, rendered in an action in the
Supreme Court triable by a jury, would be set aside by the court as
against the weight of evidence. See section 2140, Code Civ. Proc.

So far as the third and fourth findings are concerned, I am satis-
fied that this view is correct. In regard to the third alleged offense,
the proof shows that on four occasions district reports were for-
warded to the inspector bearing the signature of the relator, not writ-
ten by himself, but by some one who assumed to countersign them
in his behalf. The relator's own testimony (and there is no other evi-
dence on the subject) shows that those reports were countersigned
without his authority or knowledge, having been brought to his
house at a time when he was either ill or asleep, and signed by his
wife or some other member of his household, who was unwilling to
disturb him. The occurrence seems to have been wholly accidental,
involving no intention on the part of the relator to deceive his supe-
riors or any one else, and it does not seem to me that a conviction
of neglect of duty can possibly be sustained, upon the evidence here-
in relating to this matter, without manifest injustice. The facts
proved in regard to these district reports do not establish a conscious
violation of any rule on the part of the relator. See People ex rel.
Hogan v. French, 119 N. Y. 496, 497. As to the fourth alleged of-
fense, to the effect that the relator made a false statement to Deputy
Commissioner Ebstein with intent to deceive, the charge was that in
response to a question by the deputy commissioner as to where he
had been during the morning of May 9, 1902, Capt. Reardon replied,
"I was here in the station house all the morning," or words to that
effect, which statement was false, and intended to deceive his superior
officer. Four witnesses were called in reference to this charge, Deputy
Commissioner Ebstein, Sergt. Kohlman, Inspector McLaughlin, and
Capt. Reardon himself. All the witnesses, except the deputy com-
missioner, testified that what the captain said was that he had been
in and around or about the station house all the morning; and al-
though, on his direct examination, the deputy commissioner testified
that the captain's statement was that he was in the station house, on
cross-examination he qualified the statement by saying, "He said he
had been about the station house." The weight of evidence is clear-
ly to the effect that the captain's declaration was that he had been
in the station house or the neighborhood, and there is absolutely no
proof that this statement was false. As matter of fact, the blotter
showed upon the arrival of the deputy commissioner that the cap-
tain was on patrol, and the captain's own testimony shows that at
this time he was on patrol in the vicinity of the station. In view of
the existence of this entry, known to the relator, it is incredible that
his answer to the deputy in regard to where he had been during
the morning was made with any deceptive intent.

A more difficult question than any that has yet been considered
arises in reference to the proof in support of the first and second al-
leged defenses, to which most of the testimony in the record relates.
Paragraph E of rule 5 of the Rules and Regulations of the Police
Department makes it the duty of the captain, before leaving the

station house at any time, to enter in the blotter, in his own handwriting, the precise time and purpose of leaving, and, immediately upon returning, to enter likewise in the blotter the time of his return.   Testimony was given by Sergt. Kohlman, who was attached to the relator's precinct, to the effect that he left blanks in the blotter, by the express direction of the relator, to the end that entries might subsequently be made therein by the captain in respect to his going home or assuming command.   Further testimony was given on the same subject by Sergt. Patrick H. Bowes, who was attached to the same precinct, and who stated that he left blank spaces in the blotter in accordance with instructions from Capt. Reardon.   I am not prepared to say that the denial of the relator, and the other testimony on the same subject, constitutes such a preponderance of proof against the existence of the facts to which these witnesses in support of the charge testified so specifically, that the verdict of a jury to the same effect would be set aside as against the evidence.

Neither does it seem to me possible to hold that the second finding is against the weight of evidence.   Sergt. Kohlman testifies, not only as to leaving blank spaces in the blotter by direction of Capt. Reardon, but that he directed the sergeant to enter in the blotter statements to the effect that he was in command or was calling the roll, when as matter of fact he was not discharging either duty.   The witness does not appear to have been under the influence of any bias or interest, and I do not perceive how it can be held as matter of law that his evidence is outweighed by the testimony of the relator to the contrary.

We have here, then, a case where a captain has been dismissed from the police force upon four findings of fact, two of which are plainly against the weight of evidence, and two of which must be regarded as sufficiently established by the proof.   In fixing the punishment, the police commissioner obviously proceeded on the erroneous assumption that all four charges were made out.   The accused was an officer who had been a member of the police force for 34 years, during which period he had been reprimanded but once, and fined altogether but six days' pay.   The deputy police commissioner upon the hearing expressly conceded his good conduct in the management of his precinct.   "There is no charge," he said, "that the precinct has not been conducted all right by Capt. Reardon.   We admit it has been conducted all right."   In view of the relator's long service and good record, it may very well be that if the police commissioner had based his judgment only upon the first two findings, and had given due weight to the fact that the charge of causing a false entry to be made in the blotter rested upon the oath of only one witness, against the denial of Capt. Reardon, he would have felt that the ends of justice would have been satisfied by a much lighter punishment than that which he saw fit to inflict.   Certainly this is the impression made upon the judicial mind by a careful examination of the record in this case.

Under the circumstances, the proper course to be pursued is to reverse the determination of the police commissioner, and direct a

new trial before him or one of his deputies of the charges, and only the charges, referred to in the first and second findings of fact.

Determination reversed, without costs, and new trial directed before the police commissioner or one of his deputies upon the charges, and only the charges, referred to in the first and second findings of fact. All concur.