PEOPLE ex rel. LONG v. WHITNEY, Com'r of Correction.

(Supreme Court, Appellate Division, First Department. February 3, 1911.)

1. OFFICERS (§ 69*)—CIVIL SERVICE—LEGISLATIVE POWER.

The Legislature may enact that honorably discharged soldiers of the Union army shall be secure in their positions in the public service, as is done by Laws 1909, c. 15 (Consol. Laws, c. 7) § 22, as amended by Laws 1910, c. 264, prohibiting the removal from office of an honorably discharged soldier except for incompetency or misconduct, shown after a hearing on due notice on charges.

[Ed. Note.—For other cases, see Officers, Dec. Dig. § 69.*]

2. OFFICERS (§ 68*)—CIVIL SERVICE—REMOVAL—GROUNDS.

Under Laws 1909, c. 15 (Consol. Laws, c. 7) § 22, as amended by Laws 1910, c. 264, prohibiting the removal from office of an honorably discharged Union soldier, except for incompetency or misconduct, shown after hearing on due notice on charges, the charges justifying a removal must be substantial and not trivial or technical or showing a mere mistake of judgment without bad faith or evil purpose.

[Ed. Note.—For other cases, see Officers, Dec. Dig. § 68.*]

3. CERTIORARI (§ 25*)—REMOVAL OF OFFICER—REVIEW.

The remedy by certiorari to review the removal of an officer within the classified civil service extends not only to questions of jurisdiction, but to the sufficiency of the charges and the evidence, and to the weight and preponderance of the evidence, and to the question whether any rule of law affecting the rights of the officer has been violated to his prejudice.

[Ed. Note.—For other cases, see Certiorari, Dec. Dig. § 25.*]

4. CERTIORARI (§ 25*)—REMOVAL OF OFFICER—REVIEW.

Where the ground on which the determination removing a public officer within the classified civil service is annulled by certiorari, is the receipt

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

or consideration of incompetent evidence or other action prejudicial to the officer's right to a fair and impartial trial, and is not intended as a final determination of the charges on the merits, the court may reinstate the officer and remit the matter of his removal for further consideration on the same charges, or on a renewal thereof or on additional charges.

[Ed. Note.—For other cases, see Certiorari, Dec. Dig. § 25.*]

5. CERTIORARI (§ 69*)—REMOVAL OF OFFICER—REVIEW.
Where a trial for the removal of an officer within the classified civil service is unfair or irregular to the prejudice of the officer through bias or otherwise, the determination will be reversed, though the charges are sufficient, and though there is evidence to sustain them, unless it plainly appears that the charges must be sustained.

[Ed. Note.—For other cases, see Certiorari, Dec. Dig. § 69.*]

6. CERTIORARI (§ 25*)—REMOVAL OF OFFICER—REVIEW.
Where there is more than one charge in proceedings for the removal of an officer within the classified civil service, and all the charges have been sustained, and the punishment is so severe as to indicate that guilt on all the charges has been considered, when guilt on one or more of them has not been established by a preponderance of the evidence, the court, on certiorari, will annul the determination, and direct a rehearing on the charges as to which the evidence is insufficient.

[Ed. Note.—For other cases, see Certiorari, Dec. Dig. § 25.*]

7. MUNICIPAL CORPORATIONS (§ 212*)—CIVIL SERVICE—REMOVAL—GROUNDS.
The mayor of Greater New York notified the commissioner of correction, who held office subject to removal by the mayor, that the purchasing agent in the Department of Correction had paid an excessive price for material, and that it seemed to be scandalous and, that such thievery should be stopped, and directed the commissioner to dismiss such agent unless there was good reason to the contrary. The commissioner suspended the agent, and prepared and served on him formal charges based on the mayor's complaint. The evidence on the hearing showed that there was no thievery in connection with the purchase of the material, and that the agent acted in good faith, though under a mistake. He had been connected with the department for many years and he had faithfully performed his duties. *Held*, that the determination of the commissioner that the agent was guilty of misconduct, negligence, and incompetency, justifying his dismissal, was not sustainable because of insufficiency of evidence, and because of the influence of the mayor's letter to the commissioner to the prejudice of the agent.

[Ed. Note.—For other cases, see Municipal Corporations, Dec. Dig. § 212.*]

Miller, J., dissenting.

Certiorari by the People, on the relation of Josiah C. Long, to review a determination of Patrick A. Whitney, Commissioner of Correction of the City of New York, in removing relator from his position of purchasing agent in the Department of Correction. Writ sustained, and determination of the commissioner annulled, and relator reinstated.

Argued before INGRAHAM, P. J., and LAUGHLIN, CLARKE, SCOTT, and MILLER, JJ.

George W. Olvany, for relator.
Theodore Connoly (Harry Crone, on the brief), for respondent.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

LAUGHLIN, J. The relator is 72 years of age, and he entered the Department of Correction as a clerk, that being a position in the classified civil service of the city of New York, on the 10th day of February 1896, after having passed a civil service examination. He continued in that employment until the 1st day of August, 1903, when he was appointed purchasing agent of the department, after having likewise passed a civil service examination for that position, which was also in the classified civil service. During these 14 years of service in the Department of Correction the relator has performed his duties diligently, fairly, and honestly, and has often been required to work overtime. His duties were onerous and so increased that, for the year 1910, the commissioners, by including an item in the budget, asked for an assistant for him, which request, however, was not granted. He is an honorably discharged soldier of the Union Army and was therefore by the express command of the Legislature exempted from removal from office, "except for incompetency or misconduct shown after a hearing upon due notice upon stated charges, and with the right to such employé or appointee to a review by a writ of certiorari." Section 22, c. 15, Laws 1909 (Consol. Laws, c. 7), as amended by chapter 264, Laws 1910. No misconduct was charged or shown against the relator and the only charge made or shown bearing upon his competency is a single act of negligence. This court has repeatedly held that its authority to remove magistrates for cause does not warrant the removal of a magistrate for a single act of negligence. Matter of Barlow (App. Div., 1st Dept., decided Dec. 30, 1910) 127 N. Y. Supp. 542, and decisions therein cited.

On certiorari to review the removal of members of the Department of Fire of the city of New York, it has also been held that a single error of judgment is not sufficient to warrant removal for incompetency. People ex rel. McCabe v. Fire Com'rs, 43 Hun, 554; People ex rel. Croker v. Sturgis, 91 App. Div. 286-296, 86 N. Y. Supp. 687. In People ex rel. McCabe v. Fire Com'rs, supra, the court said:

"The man is yet to come who, in all emergencies, has not blundered, whether he be lawyer, juror or judge, major general, minister, governor, crowned head or president. And while the error committed has demonstrated that as to the particular subject a failure to deal with it properly could not be denied, it has not been regarded as evidence of incapacity to discharge the duties of the position held, or to.command. * * * A single error of judgment by him, assuming one to have been committed, * * * is not sufficient evidence of the relator's incapacity to warrant his removal."

It is, of course, possible that a single negligent act, in the light of the attendant facts and circumstances may constitute such a serious failure of duty as to show incompetency; but it is, at least, doubtful whether the neglect with which the relator was charged affords evidence of incompetency which would justify removal under the statute which we have quoted, and in the view we take of the case we do not deem it necessary to express a decided opinion on that point at this time. It was clearly competent for the Legislature, in recognition of the services to the state and to the nation performed by veterans, to enact this legislation to secure them in the positions which they occupy in the public service. The Legislature not only conferred the rights

upon the veterans, but it has conferred authority and imposed the duty upon the courts of protecting them in these rights. It is to be borne in mind that this relator was entitled, not merely to the service of charges upon him and to an opportunity of explaining them, but to the service of formal and specific charges showing misconduct or incompetency upon his part and to a formal hearing thereon, and to the right to appear by counsel, and to have the charges established by a preponderance of competent evidence. People ex rel. Fallon v. Wright, 7 App. Div. 185, 40 N. Y. Supp. 285, affirmed 150 N. Y. 444, 44 N. E. 1036; People ex rel. Brady v. O'Brien, 9 App. Div. 428, 41 N. Y. Supp. 529; People ex rel. Mayor v. Nichols, 79 N. Y. 582; People ex rel. Ellett v. Flood, 64 App. Div. 209, 71 N. Y. Supp. 1067. The charges must be substantial, and not trivial or technical, or showing a mere mistake of judgment without bad faith or evil purpose. People ex rel. Fallon v. Wright, supra; People ex rel. Reardon v. Partridge, 86 App. Div. 310, 313, 83 N. Y. Supp. 705; People ex rel. Schauwecker v. Greene, 96 App. Div. 249, 89 N. Y. Supp. 343; People ex rel. Howard v. Roosevelt, 15 App. Div. 401, 44 N. Y. Supp. 102; Matter of Kock, 91 App. Div. 194, 86 N. Y. Supp. 459. The remedy by certiorari extends, not only to questions of jurisdiction, but to the sufficiency of the charges and of the evidence, and to the weight or preponderance of the evidence, and to the question whether any rule of law affecting the rights of the relator has been violated to his prejudice. People ex rel. McCormick v. Partridge, 95 App. Div. 323, 88 N. Y. Supp. 657; People ex rel. O'Neill v. Bingham, 132 App. Div. 667, 117 N. Y. Supp. 429. Where the ground upon which a determination removing a public officer or employé is annulled or reviewed by certiorari is the receipt or consideration of incompetent evidence, or other action prejudicial to the relator's right to a fair and impartial trial, and is not intended as a final determination of the charges on the merits which would preclude a rehearing thereof under pain of punishment for contempt, the court may reinstate the relator and remit the matter to the body, board or officer whose determination is under review for further consideration or for a rehearing, which may be on the same charges or on a renewal thereof, or on those and additional charges. People ex rel. Moynihan v. Greene, 179 N. Y. 253, 72 N. E. 99; People ex rel. Moynihan v. McAdoo, 112 App. Div. 32, 90 N. Y. Supp. 40; Id., 116 App. Div. 913, 101 N. Y. Supp. 1139, affirmed 187 N. Y. 546, 80 N. E. 1117; People ex rel. Classon v. French, 16 N. Y. St. Rep. 960, 1 N. Y. Supp. 878; People ex rel. Reardon v. Partridge, supra; People ex rel. De Vries v. Hamilton, 84 App. Div. 369, 82 N. Y. Supp. 884. The court does not always direct a rehearing where the decision does not involve the merits of the charges (People ex rel. Fallon v. Wright, supra); but doubtless without any direction in the order there may be a rehearing on the same charges after the annullment of a determination removing an official or employé, where the annullment is not on the merits of the charges. People ex rel. McCormack v. McClave, 29 N. Y. St. Rep. 368, 8 N. Y. Supp. 504. If the trial be unfair or irregular to the prejudice of the relator through bias or otherwise,

the determination will be reversed, even though the charges be suffi-cient and there be evidence to sustain them, unless it plainly required that they be sustained. People ex rel. Moynihan v. McAdoo, supra; People ex rel. Fallon v. Wright, supra; People ex rel. Schauwecker v. Greene, supra; People ex rel. Croker v. Sturgis, supra. If there be more than one charge and all have been sustained, and the sentence or punishment be so severe as to indicate that guilt on all charges has been considered, when guilt on one or more of the charges is not established by a preponderance of the evidence, the court will annul the determination and direct a rehearing on the charges as to which the evidence is sufficient. People ex rel. Reardon v. Partridge, 86 App. Div. 310–315, 83 N. Y. Supp. 705. See, also, People ex rel. Clas-son v. French, supra.

An examination of the charges and of the evidence in the light of these principles convinces us that the determination should be an-nulled. There is no express charge of incompetence or misconduct, and the letter notifying the relator that the charges had been sus-tained and that he had been removed indicates that the commissioner proceeded on the theory that the relator was only entitled to an opportunity to explain, and not with a view to complying with the re-quirements of the statute relating to the rights of veterans, although at the commencement of the hearing the commissioner appears to have recognized the rights of the relator as a veteran. The formal specific charges served upon the relator are as follows:

"The mayor of New York City has called my attention to a purchase made by you, which seems irregular, and charge is hereby made against you, the specification of which is: That on or about March 25th, 1910, order was given by you to the Kenney Manufacturing Company for 'one dozen 1½' iron valve wheels at $1.50 each, total $18; and, further, that such wheels may be freely bought in the market at 6 cents apiece."

The Commissioner of Correction is appointed by the mayor for no definite term, and subject to removal when in the judgment of the mayor the public interests so require. Greater New York Charter (Laws 1901, c. 466) §§ 694, 695. The mayor drew the attention of the commissioner to the purchase which became the subject of the charges by a letter dated on the 27th day of April, 1910, signed in his official capacity, the body of which is as follows:

"Sir: The Comptroller calls my attention to a bill against your depart-ment dated March 25th by the Kenney Manufacturing Company for one dozen 1½ iron valve wheels at $1.50 each, total $18.00. He has sent out in the market and is able to buy them freely at 6 cents apiece. You will please forthwith put on trial the purchasing agent, J. C. Long, and the prison war-den, Peter A. Mallon, who certified to the correctness of the order and the bill, and dismiss them from the department summarily unless you can bring to me some good reason to the contrary. The thing seems to be very scan-dalous, and I am not able to perceive the slightest excuse for it. Anyone look-ing at the little iron wheel about four inches in diameter would know that it could not cost $1.50. Meanwhile, I shall expect you to look over your entire department, and see if such things are not occurring everywhere. Such mis-erable thievery has to be got rid of in some way. Very truly yours."

This official communication left no discretion to the commissioner. He was not at liberty to investigate the matter and to then take such

action as the facts might warrant, but he was commanded to put the relator on trial forthwith, and as might be expected he proceeded to do as directed. On receipt of this letter from the mayor he immediately suspended the relator, and prepared and served formal charges on him the next day which charges were necessarily triable before himself. The charges were based on the mayor's complaint. The facts developed on the hearing clearly show that there was no thievery in connection with ordering this material, and there was nothing to give rise to a scandal, although doubtless as the matter was presented to the mayor the inferences which he drew in that regard then seemed warranted, and he was actuated by the commendable desire to stamp out dishonesty in the public service. Had the mayor known all the facts and the relator's record both in the municipal service and in the service of the nation it is not probable that he would have thus peremptorily directed that the relator be placed on trial with a preconceived determination to remove him. The respondent not only alludes to the communication from the mayor in the formal charges which he made against the relator, but he attaches the mayor's letter to, and makes it part of his return, and, with respect thereto, states that he received this written complaint from the mayor and preferred "charges of irregular purchases in violation of the rules of the department" against the relator, and caused a copy thereof together with specifications to be served upon the relator, "notifying him that he would be allowed an opportunity to make an explanation in regard to said charges. * * * Copies of which aforesaid written complaints and of said charges together with the specifications and notice of opportunity to explain are hereto annexed, made a part hereof and marked respectively Schedules 'A,' 'B,' and 'C.'" Said schedule A. was the mayor's letter.

It might well be expected in the circumstances that the letter from the mayor would influence the action of the commissioner to the prejudice of the relator, and we are of opinion that it did, for it is improbable that a veteran with the record and experience of the relator would have been removed under charges involving, in a sense, his integrity for a single error in the performance of his duty as disclosed by the evidence. The respondent, so far as the record discloses, conducted the trial with perfect fairness, but it is probable in view of the peremptory order of his superior officer that he thought that a removal was required on proof of the fact that the relator gave the order.

The relator had charge of purchasing material and supplies for the department, and on March 3, 1910, he received a requisition in writing from the general storekeeper, duly certified by the warden of the Fourth District Prison for the purchase of one dozen 1½ iron valve wheels for use on 1½ Globe valves, it being stated in the requisition that they were "to repair Kenney Flushometer" by substituting the iron valve wheels in place of handles. With the requisition he received a letter addressed by the warden to the commissioner referring to the requisition, and stating that it was "for a supply of iron valve wheels to be substituted for broken off handles on 'Kenny Flushometer closets at Fourth District Prison.'" Relator knew that the Kenny Flusho-

meter was a patented article and who furnished it. He telephoned to the Kenny Manufacturing Company which controlled the patent with a view to obtaining information, and this resulted in Mr. Barnum, the manager of the company, coming over to relator's office. The relator showed him the requisition, and Barnum stated in substance that his company put in the flushometers at all the prisons, and that the handles were nickel plated; that all attachments used on these flushometers were nickel plated; and that iron valve wheels were never used, and that the warden evidently wanted the same attachments as had been originally put on, but had made a mistake in making out the requisition; that a shaft with attachment nickel plated, known as a Tee handle was what had been originally supplied and was in use at the prisons. On returning to his office Barnum had a formal communication in writing sent to the relator stating that the price of Tee handles for their prison style flushometer would be $1.50 each. The relator assumed on this information from Barnum and without further inquiry that the warden desired handles to replace the broken handles ·referred to in his letter and of the same character as those which had been broken, as to which he relied on Barnum's statement and without further inquiry or communication with any one he gave a formal order to the Kenny Manufacturing Company to° furnish the material at $1.50 for each valve wheel; and in writing the order he followed the requisition as it came to him and left it 1½ dozen iron valve wheels, expecting that the order would be filled with the nickel plated Tee handles as agreed upon between them, and as that was the only kind of attachment used in connection with the flushometers. There is evidence tending to show that he understood that nickel plated wheel valves would be furnished, but Barnum intended to furnish "I" valves. The matter was not again brought to his attention until he was suspended. The material was not required to be delivered to the relator, and it was not his duty to inspect it. It was the duty of the storekeeper to see that the material received and accepted corresponded with the requisition. It appears that the warden in fact desired iron valve wheels as stated in his requisition, and the Kenney Manufacturing Company, without the knowledge of Barnum, on ascertaining this after receiving the order, purchased and supplied iron valve wheels which it purchased for 15 cents each, and it would not have charged the city over 25 cents each for the valve had it not been for the oversight in letting the bill go through at the original figures. Neither the requisition nor the order, however, was changed, and in due course the bill reached the Comptroller for audit at $18, the figures as filled in by the relator, and the mistake was discovered by an employé of the Comptroller's office, whose duty it was to pass on the bills. The relator had no relations with any one connected with the Kenney Manufacturing Company and he had never before met Mr. Barnum. There is not the slightest ground even for suspicion with respect to the honesty of his motives in making out and giving the order in this manner without inquiry of the warden, or changing it to conform to the material that he understood would be supplied. He concedes that he made a mistake in not writing in the

letters "N. P." which would have indicated that the valves should be nickel plated, but he excuses his omission on the ground of volume of work on hand.

The return shows that the respondent found the relator guilty as charged, and since it also shows that the mayor's letter constitutes part of the charges it is left open to the inference that he has found relator guilty on the ones specified in that letter as well as those specified in his formal charges although doubtless such was not his intention. In his letter dismissing the relator the respondent states that he has found that the charges are sustained, and that the relator has been "guilty of misconduct, neglect and incompetence," and he then specifies the acts constituting the misconduct, neglect, and incompetence, as, issuing the order for iron wheels after he had arranged with Barnum to supply nickel plated wheels without consulting with the warden who had made the requisition, and at $1.50 each when iron wheels could have been purchased at from 6 to 15 cents each. As already observed there was here no misconduct, and the determination that the relator was guilty of misconduct is not warranted by the evidence. It may be that the respondent would have removed the relator even if he had not deemed him guilty of misconduct, but this does not definitely appear. We only know that the relator has been erroneously adjudged guilty of misconduct, and therefore, as already observed, we do not deem it necessary to decide, whether the charges with respect to neglect of duty and the evidence relating thereto would be sufficient to sustain a removal of the relator on the ground of incompetence, for this record discloses a state of facts on which the relator did not have a fair and impartial hearing on that specific charge alone.

It follows, therefore, that the writ should be sustained, the determination of the commissioner annulled and the relator reinstated, with $50 costs and disbursements.

INGRAHAM, P. J., and CLARKE and SCOTT, JJ., concur. MILLER, J., dissents.