In the Matter of the Application of CLARENCE M. DAVIS, JR., for a Certiorari Order against HENRY D. SAYER, Industrial Commissioner, Department of Labor of the State of New York.

Second Department, May 18, 1923.

Civil service — certiorari to review proceeding of State Industrial Commissioner in removing petitioner, a veteran, as assistant chief of claims in Bureau of Workmen's Compensation — charge preferred was failure to carry out instructions and inefficiency — Civil Service Law, § 22, does not require specification of charges in notice of hearing — specific charge made at hearing was delay in answering letters after notice that all letters must be answered — objection that stated charges were not served not substantial — Civil Service Law, § 22, contemplates hearing before Commissioner — petitioner admitted charges at hearing — veteran is entitled to review under Civil Service Law, § 22, on question of sufficiency of charges and evidence in support thereof — charge made was substantial and supported by evidence — destruction of old unanswered correspondence was violation of law — petitioner was properly dismissed.

The State Industrial Commissioner is not required by section 22 of the Civil Service Law, in preferring charges against the assistant chief of claims in the Bureau of Workmen's Compensation, a veteran, to specify the charges or state the specific acts or omissions; said section requires merely " stated charges."

The objection by the petitioner that he was not served with stated charges was not substantial, since it appears that he made no such objection before the Commissioner and upon the hearing not only appeared to be entirely familiar with the charges but admitted the facts on which the charges were based.

Section 22 of the Civil Service Law contemplates a hearing before the Commissioner, and, therefore, there is no merit in the petitioner's criticism that the Commissioner acted as accuser, prosecutor and judge.

A veteran is expressly given the right by section 22 of the Civil Service Law to review the action of the Commissioner by certiorari and he is entitled to the judgment of the court as to the sufficiency of the charges made and whether there was evidence justifying his dismissal.

The charges made by the Commissioner against the petitioner of failure to carry out instructions and inefficiency were substantial and were supported by the evidence at the hearing, since it appears that the specific charge was that the petitioner had neglected to answer letters making inquiry as to pending cases and neglected to answer applicants for compensation under the Workmen's Compensation Law; that several months before the charges were preferred, a notice was sent by the Commissioner to the director of the Bureau of Workmen's Compensation calling attention to numerous complaints indicating that letters written to the Department had not been answered and stating that failure to answer letters would be deemed sufficient cause for dismissal of the employee responsible; that petitioner knew of this notice; that he admitted that he stated to the Commissioner at the time he assumed his present position that the unanswered correspondence could be cleaned up in a very short time, but up to the time the charges were preferred, some two months thereafter, he had not done anything towards answering that correspondence; that he

admitted he had destroyed many old letters without answering them and the only excuse offered by the petitioner for his neglect was that the unanswered correspondence accumulated before he assumed his present position.

The act of the petitioner in destroying letters and communications sent to the Bureau constituted a serious violation of law, since he had no right to destroy any records of the office.

While under the law relating to veterans they are entitled to a fair hearing or trial and to a review of the proceedings, still when serious delinquencies are admitted, the Appellate Division will be slow to interfere with the head of the Department in his decision that the employee has failed to carry out instructions or that he is inefficient, and in view of the evidence and of the fact that no charge of bad faith on the part of the Commissioner is made, his determination in dismissing the petitioner must be confirmed.

CERTIORARI ORDER granted out of the Supreme Court at the Kings Special Term on the 12th day of August, 1922, and entered in the office of the clerk of the county of Kings, directed to Henry D. Sayer, Industrial Commissioner, Department of Labor of the State of New York, commanding him to certify and return to said clerk's office all and singular his proceedings had in connection with the dismissal of the petitioner from the position of assistant chief of claims in the Bureau of Workmen's Compensation of the Department of Labor of the State of New York.

*Samuel Silbiger,* for the petitioner.

*Robert P. Beyer, Deputy Attorney-General [Carl Sherman, Attorney-General,* with him on the brief], for the respondent.

KELLY, P. J.:

The petitioner, Davis, was entitled to the protection of the Civil Service Law, and could not be removed from his position in the Labor Department except for incompetency or misconduct shown after a hearing upon due notice upon stated charges. (Civ. Serv. Law, § 22, as amd. by Laws of 1920, chap. 833; *People ex rel. Long* v. *Whitney,* 143 App. Div. 17.) He appears to have obtained a position in the office of the Industrial Commissioner, Labor Department, and on January 1, 1922, was an examiner in that office at a salary of $1,800 per annum. On January 1, 1922, his salary was increased to $2,000 per annum. On February 16, 1922, he was promoted to be assistant chief of claims in charge of the examiners in the New York office at a salary of $2,400 per annum. On April 10, 1922, he received a notice from Commissioner Sayer suspending him and requiring him to appear at ten o'clock in the morning of the following day, to show cause why he should not be removed " for failure to carry out instructions of the Department and for inefficiency." He says the notice does not contain any " specification of charges " and that he was not otherwise apprised of " any specific acts or omissions;" for which he was to be tried.

Section 22 does not in terms require " specification of charges " or statement of " specific acts' or omissions," it requires " stated charges," and I am inclined to think the notice here stated the charges.

The petitioner goes on to state that on April eleventh he appeared before the Commissioner and was asked to make explanations of the charges. He alleges that he was not advised " that such hearing was intended as a trial of charges properly presented against him." As to what actually transpired on the hearing we have a stenographic report attached to the answer of the Commissioner. The petitioner avers that he did not know of the specific charges which he was to meet and that he was not granted any opportunity to properly prepare a defense. The trouble with this is that the record contains specific charges. I cannot find that he asked for any opportunity or additional time to prepare a defense, and the Commissioner's action is based upon admissions made by the petitioner on the hearing, coupled with his explanation.

It seems to me we are brought to the question whether the charges of " failure to carry out instructions of the Department " and " inefficiency," are supported by the admissions made by the petitioner upon the hearing and whether the charges were substantial and not trivial or technical, or showing a mere error of judgment without bad faith or evil purpose. (*People ex rel. Long* v. *Whitney*, 143 App. Div. 17; *People ex rel. Fallon* v. *Wright*, 7 id. 185; affd., 150 N. Y. 444; *People ex rel. Reardon* v. *Partridge*, 86 App. Div. 310; *People ex rel. Howard* v. *Roosevelt*, 15 id. 401; affd., without opinion, 153 N. Y. 689; *Matter of Koch*, 91 App. Div. 194; *People ex rel. Lenahan* v. *Grifenhagen*, 164 id. 180; *People ex rel. Alexander* v. *Brady*, 50 id. 372.) " The cause assigned for discharge of a civil service appointee must be some dereliction of duty, or something affecting his character and fitness for his position." (*People ex rel. Rudd* v. *Cropsey*, 173 App. Div. 714; affd., 219 N. Y. 641.) " The mere technical breach of rules on the part of a World War veteran protected by the Civil Service Law [§ 22], * * * without wrongful intent, was not sufficient to warrant his dismissal from the service." (*People ex rel. Rigby* v. *Anderson*, 198 App. Div. 283.)

The petitioner argues that he was not served with stated charges and that he did not have due notice. But he made no such objections before the Commissioner and upon the hearing appeared to be entirely familiar with the matters alleged against him, and as I have already stated he appears to have admitted the facts upon which the charges are based. Granting petitioner's claim that the Legislature intended to protect the veteran against bias or

unfair treatment, the difficulty here is that he admitted the various things alleged against him. He criticizes the Commissioner for acting as " accuser," " prosecutor " and " judge." I think section 22 of the Civil Service Law contemplates a hearing before the Commissioner or head of the Department.

Upon the hearing on April 11, 1922, the petitioner admitted that he knew of a notice sent by the Commissioner to the director of the Bureau in January, 1922, in which attention was called to numerous complaints received indicating that letters written to the Department making inquiry as to pending cases were unanswered, and that upon investigation the letters were found in the records of the office, no attention having been given to them. And in this notice the Commissioner directed that all letters received must be answered or acknowledged, that the practice must be brought to a stop and that the employees must be informed that failure to answer letters would be deemed sufficient cause for dismissal of the employee responsible. The petitioner admitted that this letter had been brought to his attention, and that various letters which the petitioner designated as " old stuff " had been " dug out " and that he had planned to " work one night last week and get rid of it." The notice had been sent in January, the hearing was in April, and the petitioner said that " it just happened that that was the night you [the Commissioner] came down there." After the Commissioner had discovered these unanswered letters, the petitioner and another clerk worked until eleven o'clock that night and as to many of the letters he says: " where a hearing was requested, and the case had gone to the calendar, we threw in the waste basket. I thought that was the most efficient way of handling them." Asked how many letters he threw in the waste basket he answered: " I can't say  *  *  *  but I think about a batch that size (indicating); there were at least one hundred. Most of them were very old. The current mail is being answered within three or four days after it comes in. I think that is a reasonable length of time. The current mail has been taken care of that way since I have been in charge of the department down there." He was handed several letters from claimants, dated September, 1921, complaining of failure to answer, but could give no explanation concerning them, except that he had not been in charge until February 15, 1922. He insisted that he had worked hard, that he found an accumulation of correspondence and cases dating back as far as July, 1921, but said it took time to get matters straightened out. Asked how long it should take, he said: " It could all be dictated on in a day. It might take the girl two days to write it up." He said he had been aware

Second Department, May, 1923. [Vol. 205

of the accumulation of unanswered matter since the latter part of January. He had never brought it to the attention of the Commissioner. By singular coincidence he had intended to take it up and get it out of the way the very night that the Commissioner had made his personal examination and discovered the conditions.

He admitted that when he was appointed the Commissioner sent for him and told him he wanted the work cleaned up. This was in February, 1922, and he then told the Commissioner it could be done with the employees then in the office. He admitted that this matter was in his charge and said he did not shirk the responsibility for it, but contended that the accumulation happened before he took charge and suggested that the Commissioner could not " expect an unreasonable amount of work in that time." He claimed credit for having instituted certain reforms and asked that they be " read into the record," and the Commissioner permitted him to state his claims, which, however, do not meet the precise charge made against him concerning the unanswered letters.

Then the Commissioner asked Mr. Coleman, the attorney to the Commissioner, if he wanted to ask any questions, and in answer to Coleman the petitioner said he certainly realized thoroughly the importance of getting the correspondence cleaned up, getting the filing cleaned up, and the work up to date. He says his force " worked nights for quite a little time." It appears that there was some trouble about getting the clerks to come on time at nine o'clock in the morning. Petitioner said the time card system was no good and as to the time clocks, " They are stored away somewhere." He confessed his inability to " catch " the dodgers. He said: " I have not taken much action on the time, because I have been anxious to get a just time system installed." The Commissioner said: " I guess that is about all, unless you have more to say. I will take the matter under advisement."

The petitioner made no request for further time. This was on April 11, 1922, and on April 13, 1922, the Commissioner removed petitioner from the position of assistant chief of claims.

There is nothing in the petition or in the printed record to indicate bad faith on the part of the Commissioner. No bad faith or ulterior motives are charged, the petitioner's grievance being that the dismissal " was wholly unwarranted and unsupported by any proper evidence and in violation of your petitioner's rights and was illegal and irregular, unsupported by law and wholly against the weight of evidence."

The law governing the action of the head of a department in removing civil service employees upon charges has been frequently

construed by the courts. " The cause assigned must be substantial and not shadowy, and that the explanation must be received and acted upon in good faith and not arbitrarily. To be substantial, the cause assigned must be some dereliction on the part of the subordinate, or neglect of duty, or something affecting his character or fitness for the position. * * * This explanation is not a mere form to precede a predetermined removal. The minds of the commissioners must be open to the explanation. They must act upon it fairly and reasonably. They cannot arbitrarily disregard it." (*People ex rel. Mitchel* v. *La Grange*, 2 App. Div. 444; affd., on opinion below, 151 N. Y. 664; cited with approval by HISCOCK, J., in *Matter of Griffin* v. *Thompson*, 202 N. Y. 104, 109.) And Judge HISCOCK referred to *People ex rel. Kennedy* v. *Brady* (166 N. Y. 44), where the court said: " The reasons assigned for the removal must appear, upon their face, to justify the action; in other words, they must be substantial and not frivolous, but when they appear to be sufficient to justify the determination the courts have no power to interfere on the ground that the reasons, though good in themselves, had no existence as matter of fact, or that the explanation given by the subordinate should have satisfied the head of the department. In other words, the sufficiency of the relator's explanation was a question for the commissioner alone to determine, and the courts have no power to interfere with his discretion in that regard. [*People ex rel. Munday* v. *Fire Commissioners*, 72 N. Y. 445; *People ex rel. Sims* v. *Fire Commissioners*, 73 N. Y. 440; *People ex rel. Keech* v. *Thompson*, 94 N. Y. 451.]"

These cases, however, had relation to the provisions of the civil service statute in relation to municipal employees who were simply entitled to notice of the reasons for removal with opportunity to make an explanation where the employee was not entitled to a trial or a judicial hearing and could only complain when the necessary formalities had not been complied with. In *People ex rel. Kennedy* v. *Brady* (*supra*) the court held that the action of the defendant commissioner of buildings in removing the relator was not a judicial proceeding in any legal sense and that a writ of certiorari would not lie to review his action except, possibly, in cases where he had not complied with the law in filing written reasons and affording the subordinate an opportunity for explanation.

But by section 22 of the Civil Service Law the veteran is expressly given the right to review the action of the Commissioner by writ of certiorari [certiorari order], and I think he is entitled to the judgment of the court as to the sufficiency of the charges made

and whether there was evidence justifying the Commissioner's action. (*People ex rel. Kelly* v. *Kirchwey*, 177 App. Div. 706.)

Tested by this rule, I think we cannot say that the charges made in the present case were not substantial or that upon the record before us the Commissioner's finding was contrary to the evidence.

The Commissioner alleges in his return to the certiorari order that the delay in answering applicants for compensation under the Workmen's Compensation Law had been the subject of numerous complaints to the Department and to the Governor. In fact we may almost take judicial notice of the fact that the unsatisfactory management of the Department with reference to failure to answer applicants for compensation was a matter of public notoriety so as to constitute one of the issues in the State campaign in 1922. It is alleged that the attention of the petitioner who was in charge of these applications was called to these complaints, and I think he admits it. When he was appointed assistant chief of claims in February he had already been in the Department for some time. His only excuse is that the accumulation of unanswered letters had come about *before* he assumed charge in February. But the significant thing is that in his statement to the Commissioner, admitting knowledge of existing conditions, he says that the matter could have been remedied apparently by *one night's work* over the files and that the girl typewriters could have sent out the answers, etc., in two or three days. He had not attacked this accumulation down to the time the Commissioner went personally into the files, and he then makes what seems to be a rather lame excuse, viz., *that it so happened that he had arranged to do the work on the night of the very day the examination was made.* There was a conceded delay of two months. These applicants for compensation, barred from the courts by the law, were entitled to prompt consideration. That answers should be delayed was a distinct substantial grievance carrying with it serious results and exposing the helpless applicants to all sorts of hardship and imposition. When the petitioner admitted that on the night of the day the Commissioner made his personal investigation of the files, he with his associate Lawson came from the " hall downstairs " and worked until eleven o'clock and threw a lot of the letters and communications " in the waste basket " because " The files are overtaxed as it is with filing, and to overburden them with stuff which is taken care of and clog the files with it, I don't think is good business," I think he admitted a serious violation of the law. He had no right to destroy or throw into the waste basket any of the records of the office. He admitted that he did away with

" at least one hundred. Most of them were very old." His contention is that the claims referred to were taken up or were in course of adjustment or possibly adjusted (although he does not say so), but the " irregularity " to say the least, of his action, must be apparent. When confronted with several specific letters he could not give any information concerning them.

While under the law relating to veterans they are entitled to a fair hearing or trial, and to a review of the proceedings in this court, still when the serious delinquencies are *admitted,* we should be slow to interfere with the Commissioner or head of the department in his decision that the employee had failed to carry out instructions or that he was inefficient. Here the Commissioner in charge of the office was necessarily familiar with all the details; his good faith is not attacked in the petition. I do not think the courts should attempt to interfere with his management of his office or demoralize it by setting aside his rulings, except for substantial error shown.

I think the determination of the Industrial Commissioner, Department of Labor, State of New York, dismissing petitioner, should be confirmed, but without costs.

RICH, JAYCOX, MANNING and KELBY, JJ., concur.

Determination of Industrial Commissioner, Department of Labor, State of New York, dismissing petitioner, confirmed, without costs.